**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

FERNANDO JAVIER ORTIZ,

      Petitioner,

-vs-                               Case No.  8:02-CV-905-T-30TBM
                                                      8:01-CR-228-T-30TBM

UNITED STATES OF AMERICA,

      Respondent.
_____/

## **ORDER**

Petitioner, an inmate in the federal penal system, initiated this matter by filing a motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255 challenging his 2001 conviction on drug related charges (CR Dkt. 90). Respondent has filed a response to the motion (CR Dkt. 124), and Petitioner has filed a reply thereto (CR Dkt. 127). The matter is now before the Court for consideration of the merits of the motion.

**Background**

On June 14, 2001, Petitioner was charged in a two-count indictment with conspiracy to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II), and § 846 (Count One), and possession with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(b)(1)(A)(ii)(II) and § 846 and 18 U.S.C. § 2 (Count Two) (CR Dkt. 27).

On August 10, 2001, Petitioner, represented by counsel, *see* CR Dkt. 55, appeared before United States Magistrate Judge Thomas G. Wilson and, pursuant to a negotiated plea agreement, *see* CR. Dkt. 51, entered a plea of guilty to Count One of the indictment in exchange for the Government's promise to dismiss Count Two at the sentencing hearing (CR Dkt. 51 at 2). As one of the terms of his plea agreement, Petitioner expressly waived his right to appeal his sentence:

> directly or collaterally, on any ground, including the applicability of the "safety valve" provisions contained in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

(CR Dkt. 51 at 12-13). Following the change of plea hearing, Magistrate Judge Wilson reported to this Court that he had determined that the guilty plea was knowledgeable and voluntary, and recommended that Petitioner's plea of guilty be accepted (CR Dkt. 58). The Court accepted his plea on September 4, 2001 (CR Dkt. 73). Petitioner was sentenced on November 27, 2001 to serve a term of 121 months imprisonment, to be followed by a 60-month term of supervised release, and the Government dismissed Count Two of the indictment (CR Dkt. 89).

On May 22, 2002, Petitioner filed the instant motion seeking relief pursuant to 28 U.S.C. § 2255 (CR Dkt. 119). He asserts two grounds for relief:

> 1. [Petitioner] was denied his Sixth Amendment constitutional right when his counsel failed to provide him with effective representation during the pre-sentence process; and

      2.    [Petitioner] was denied effective assistance of counsel when his counsel failed to recognize that [his] rights under the Vienna Convention were violated.

CR Dkt. 119. As discussed below, Petitioner is precluded by the terms of his plea agreement from raising these issues. Moreover, as the Government argues in its response, the motion should be denied because Petitioner has failed to demonstrate prejudice or deficient performance amounting to ineffective assistance of counsel (CR Dkt. 124 at 2). For reasons set forth below, the Court agrees.

## Standard of Review

Title 28 U.S.C. § 2255 sets forth the framework for reviewing a federal prisoner's sentence for any of the following four reasons: (1) the sentence was imposed in violation of the Constitution of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Case law establishes that only constitutional claims, jurisdictional claims, and claims of error so fundamental as to have resulted in a complete miscarriage of justice are cognizable on collateral attack. *See United States v. Addonizio*, 442 U.S. 178, 185 (1979); *Hill v. United States*, 368 U.S. 424, 428 (1962); *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988).

Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding. *See Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989) (and the cases cited therein), *cert. denied*, 494 U.S. 1018 (1990). A ground of error is usually "available"

on direct appeal when its merits can be reviewed without further factual development. It is well-settled that sentence-appeal waivers are valid if made knowingly and voluntarily. *See United States v. Bushert*, 997 F.2d 1343, 1350-51 (11th Cir. 1993).

Guilty pleas waive all but jurisdictional claims up to the time of the plea, *see Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Stano v. Dugger*, 921 F.2d 1125, 1150 (11th Cir.), *cert. denied*, 502 U.S. 835 (1991), and foreclose most claims from collateral attack, *see United States v. Broce*, 488 U.S. 563, 569 (1989). This waiver includes constitutional claims. *See Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992) (pre-plea ineffectiveness waived); *Dermota v. United States*, 895 F.2d 1324 (11th Cir.) (double jeopardy claim waived), *cert. denied*, 498 U.S. 837 (1990). Finding that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing" the Eleventh Circuit opined that to hold otherwise would "permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005).

**Evidentiary Hearing**

The Court has carefully reviewed the record and concludes that Petitioner is not entitled to an evidentiary hearing. "Under Rules Governing Section 2255 Cases, Rule 4(b), a district court faced with a § 2255 motion may make an order for its summary dismissal '[i]f

it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief[.]'" *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002) (quoting 28 U.S.C. § 2255). Accordingly, no hearing is required when the record establishes that the § 2255 claims lack merit, *see United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984), or that one defaulted, *see McCleskey v. Zant*, 499 U.S. 467, 494 (1991). The Court finds that an evidentiary hearing is not required in this matter. *See Jones v. United States*, 304 F.3d 1035, 1045 n.18 (11th Cir. 2002); *In re Boshears,* 110 F.3d 1538, 1541 n.1 (11th Cir. 1997) (recognizing that "hearing and findings of fact [are] not required for [a] § 2255 motion where 'the files and records of the case conclusively show that the prisoner is entitled to no relief' (quoting 28 U.S.C. § 2255)).

## Discussion

The crux of Petitioner's complaint is that the sentence he received was greater than he expected to receive when he signed the plea agreement. Petitioner has had the benefit of his bargain – Count Two of the indictment was dismissed. The Government is likewise entitled to the benefit of its bargain.

When he executed the plea agreement, Petitioner acknowledged that it "constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea" (Dkt. 51 at 16). Petitioner initialed the bottom of each page of the plea agreement, and both

he and his attorney signed the document, certifying that the "plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms." *Id.* at 17.  One of the effects of the plea agreement was that Petitioner waived his right to appeal any factual or legal finding made by the Court in calculating the appropriate guideline range, unless the Court upwardly departed or the Government appealed.

In this circuit, written plea agreements are considered to be part of the record of the Rule 11[1] hearing.  *See United States v. Bell*, 776 F.2d 965, 969 (11th Cir. 1985) (footnote added), *cert. denied,* 477 U.S. 904 (1986).  *See also United States v. Padilla,* 23 F.3d 1220, 1221-22 (7th Cir. 1994) (looking to written plea agreement to determine if defendant knew of mandatory minimum sentence).  "[W]here a signed, written plea agreement describing a mandatory minimum sentence is specifically referred to during a Rule 11 plea colloquy, the core principle that the defendant be aware of the consequences of his plea has been complied with . . . [and] [t]he defendant's substantial rights were not violated." *United States v. Jones*, 143 F.3d 1417, 1420 (11th Cir. 1998) (citation omitted).  *See also United States v. Clark*, 274 F.2d 1325, 1330 (11th Cir. 2001).  The waiver includes claims of ineffective assistance of

---

[1] Before the court accepts a plea of guilty . . . , the defendant may be placed under oath, and the court must address [him] personally in open court. . . . [T]he court must inform the defendant of, and determine that the defendant understands, the following:  (A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath; (B) the right to plead not guilty, or having already so pleaded, to persist in that plea; (C) the right to a jury trial; (D) the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding; (E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; (F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere; (G) the nature of each charge to which the defendant is pleading; (H) any maximum possible penalty, including imprisonment, fine, and term of supervised release; (I) any mandatory minimum penalty; (J) any applicable forfeiture; (K) the court's authority to order restitution; (L) the court's obligation to impose a special assessment; (M) the court's obligation to apply the Sentencing Guidelines, and the court's discretion to depart from those guidelines under some circumstances; and (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Rule 11(b)(1)(A)-(N), Fed. R. Crim. P.

counsel at sentencing. *See Williams*, 396 F.3d at 1342.

Rule 11(b)(1) provides, *inter alia*, that a court accepting a plea inform the defendant of the maximum possible penalty, including imprisonment and any mandatory minimum penalty. Rule 11(b)(1)(H)-(I), Fed. R. Crim. P. In his report to the Court, Magistrate Judge Wilson states that after "cautioning and examining the defendant under oath . . ., [Defendant's] guilty plea was knowledgeable and voluntary" (CR Dkt. 58). A review of the transcript of the change of plea hearing confirms that Judge Wilson reviewed the plea agreement with Petitioner, including the appeal waiver provision (CR Dkt. 101 at 38). In addition, a review of the plea agreement confirms that Petitioner acknowledged therein that he was aware that he would be sentenced under the applicable provisions of the sentencing guidelines, that he and trial counsel had discussed the sentencing guidelines, and he understood how the guidelines were applicable in his case (CR Dkt. 51 at 11-12).

Alternatively, even if his claims were not waived by the appeal waiver, Petitioner still would not be entitled to the relief he seeks because the record refutes each of his claims. For claims of ineffective assistance of counsel, the two-part test developed by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), applies: 1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and 2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

The two-pronged *Strickland* test is also applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct. *Hill*, 474 U.S. at 58. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.*

The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, the petitioner claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial. *Id.*

In *Sims v. Singletary*, 155 F.3d 1297, 1305 (11 th Cir. 1998), the Eleventh Circuit discussed ineffective assistance of counsel:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104

> S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

The Eleventh Circuit further stated that "[w]hen applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds." *Sims*, 155 F.3d at 1305 (citing *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998)). In *Strickland* the Supreme Court held that "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Under *Strickland*, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).

First, contrary to Petitioner's assertion otherwise, trial counsel was aware of Petitioner's criminal history when he advised Petitioner to plead guilty to the crime of conspiracy to distribute five or more kilograms of cocaine in exchange for the Government agreeing not to seek enhancement of his sentence. *See* CR Dkt. 118 at 23. The following exchange took place at the change of plea hearing:

> MR. FERNANDEZ: Judge, just for the record . . . in order to avoid any problems that may exist when another lawyer reviews the plea down the line, the recommendation to plead recognizing the four kilo

>versus five kilo argument was made because the government had the opportunity to enhance him for a prior conviction. Therefore, if he had prevailed at trial he would be looking at a 10-year minimum anyway. . . If he lost at trial he would be looking at a 20-year minimum. . . So we've agreed to enter the plea. There will be no enhancement. And he's still eligible, perhaps, for a safety valve reduction. So for those reasons we have negotiated this plea.

>THE COURT: Okay. All right. So there was the potential of getting up to the 10-year minimum and life maximum just on the basis of a prior conviction?

>MR. FERNANDEZ: That's correct.

*Id*. at 23-24. Thus, Petitioner's claim that trial counsel erroneously advised him to plead guilty rather than to go to trial because he had not performed an investigation into Petitioner' criminal history is refuted by the record. *See also* CR Dkt. 120 at 16-17. Moreover, the imposition of a sentence greater than that expected by a defendant, or predicted by his counsel is not adequate grounds for vacating the sentence under § 2255. *See Domenica v. United States*, 292 F.2d 483, 485 (1st Cir. 1961); *United States v. Pallotta*, 433 F.2d 594, 595 (1st Cir. 1970).

Similarly, Petitioner's assertion that he could have prevailed at trial by showing that he was responsible for four, rather than five, kilograms of cocaine, is refuted by the record. *See* CR Dkt. 118 at 21-22.

Petitioner mistakes the elements of the offense to which he agreed to plead -- conspiracy to possess a controlled substance -- with the elements of the offense of possession of a controlled substance. It is well-settled law that a conspirator is "responsible for conspiracy activities in which he is involved, and for drugs involved in those activities, and

for subsequent acts and conduct of co-conspirators, and drugs involved in those acts or conduct, that are in furtherance of the conspiracy and are reasonably foreseeable to him." *United States v. Beasley*, 2 F.3d 1551, 1552 (11th Cir. 1993).

Before he entered his plea, the magistrate judge discussed the terms of the plea agreement with Petitioner, again making sure that he was aware that he had agreed to be held accountable for 5 kilograms of cocaine and if he went to trial the government would have to prove that quantity. Judge Wilson thoroughly explained that Petitioner was waiving his right to appeal the drug amount, and Petitioner specifically admitted that the conspiracy plan involved future purchases of cocaine in amounts totaling more than five kilograms:

> MR. MEUNCH: Judge, the government would also be required to prove that the offense involved five kilograms or more. . . [O]n this particular day they only had enough money for four kilograms, but the plan was for this to be an ongoing relationship on a weekly or bi-weekly basis.

. . .

> THE COURT: Mr. Ortiz, did you understand that you may have the opportunity to buy additional cocaine at some later time?
>
> PETITIONER: What do you mean at an additional time?
>
> THE COURT: Well, what the government has just said is that right at this point there wasn't five kilograms of cocaine which makes a difference in terms of the sentence, but that at some other occasions that additional cocaine would be purchased.  Is that true?
>
> PETITIONER: Yeah, that's what we spoke about in the deal.
>
> THE COURT: Okay.  And do you understand that in order to have the sentence that is set out in the Plea Agreement of a minimum of 10 years in prison to life in prison the government would have to show there was an agreement to purchase five kilograms or more; do you understand that?

PETITIONER:     Yes.

THE COURT:      So that you would have a right to go to trial and contend that they couldn't prove five kilograms was involved in this plan; do you understand that?

PETITIONER:     Yes, I understand.

THE COURT:      And do you understand that by pleading guilty you admit that there was a plan involving five kilograms; do you understand that?

PETITIONER:     Yes, I understand that.

THE COURT:      And do you understand that some later time you cannot complain later that the government really couldn't prove five kilograms; do you understand that?

PETITIONER:     Yes, I understand that.

THE COURT:      And do you understand that you could go to trial and the only issue you might want to raise is whether the government could prove five kilograms; do you understand that?

PETITIONER:     Yes.

THE COURT:      And if the government couldn't prove five kilograms but only four kilograms, then the sentence would be a five-year minimum mandatory sentence and a 40-year maximum sentence. . . do you understand that?

PETITIONER:     Yes.

THE COURT:      With that understanding do you still want to plead guilty?

PETITIONER:     Yes.

*Id.* at 21-23.  Petitioner entered a plea to conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii)(II), which was punishable by a mandatory minimum term of 10 years up to a maximum of life imprisonment.

Petitioner does not deny participating in the conspiracy. He contends, instead, that the Government could not prove that he was responsible for more than 4 kilograms of cocaine. Had Petitioner entered a plea to the possession charge and the Government not established <u>any</u> quantity at all, Petitioner would have been subject to "a term of imprisonment of not more than 20 years." 21 U.S.C. § 841(b)(1)(C). Since, however, Petitioner admitted to having been in possession of 4 kilograms of cocaine, he would have been subject to "a term of imprisonment . . . not . . . less than 5 years and not more than 40 years." 21 U.S.C. § 841(b)(1)(B)(ii)(II).  Petitioner was only sentenced to a term of 121 months imprisonment, clearly within the statutory maximum set forth in 21 U.S.C. § 841(b)(1)(c) for a controlled substance offense without regard to drug quantity and 21 U.S.C. § 841(b)(1)(B)(ii)(II) for a controlled substance offense involving 500 grams or more of cocaine.

When drug quantity is left to the court at sentencing in a drug conspiracy case, "a member of a drug conspiracy is liable for his or her own acts and for 'all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.'" *United States v. Beasley*, 2 F.3d 1551, 1552 (11th Cir. 1993).  Given Petitioner's responses to queries during the plea colloquy, he would have been held accountable at sentencing for 5 kilograms or more of cocaine.  Petitioner argues that he had never met or made any agreement with Mr. Torres or Mr. Abella, and that he cannot be held accountable

for acts by co-conspirator Sanchez . Yet, during the plea colloquy, Petitioner acknowledged that the 4-kilogram purchase was to be the first of a series of cocaine purchases.

Finally, Petitioner's assertion that his rights under the Vienna Convention were violated is without merit. The Eleventh Circuit has declined to specifically find that the Vienna Convention creates a private cause of action enforceable by individuals, but has held that even if it does, no remedy is available absent a showing of prejudice. *United States v. Cordoba-Mosquera*, 212 F.3d 1194, 1196 (11th Cir. 2000); *see also United States v. Duarte-Acero*, 132 F. Supp. 2d 1036 (S.D. Fla. 2001), *aff'd*, 296 F.3d 1277 (11th Cir. 2002), *cert. denied*, 537 U.S. 1038 (2002). Petitioner claims that the missed opportunity to speak with a member of the Colombian consulate affected his right to adequate counsel because he was not otherwise aware that he could obtain replacement counsel for his allegedly deficient counsel. To the contrary, the record reflects that not only was Petitioner not a novice to the American criminal justice system (CR Dkt. 120 at 17), but he was also aware of his right to discharge counsel, and had, in fact previously exercised that right in the instant case when he dismissed his court-appointed attorney, preferring instead to retain private counsel (CR Dkts. 21, 23).

Petitioner sets forth an attenuated alternate chain of events that he speculates would have resulted in a lesser sentence than the one he received. Specifically, Petitioner envisions a scenario in which the Colombian consulate would have assisted him to obtain new, more adequate counsel that would have successfully argued his responsibility for a lesser drug quantity (CR Dkt. 120 at 26-27). Petitioner was charged with conspiracy to distribute five

kilograms or more of cocaine (CR Dkt. 27). Although he may only have intended to purchase four kilograms on the occasion of his arrest, he is liable for the reasonably foreseeable total quantity of drugs intended to be purchased in the overall conspiracy plan. *See United States v. O'Neal*, 362 F.3d 1310, 1316 (11th Cir. 2004). As previously discussed, Petitioner admitted at the change of plea hearing that the plan involved subsequent cocaine purchases (CR Dkt. 118 at 21), which would have brought the total drug quantity to five kilograms or more. Thus, Petitioner has failed to demonstrate how the missed opportunity to speak with a member of the Colombian consulate prejudiced the outcome of his conviction.

This Court concludes that Petitioner has failed to demonstrate that his trial counsel's performance was deficient. As demonstrated by the record, Petitioner has also failed to establish that there is a reasonable probability that, but for trial counsel's errors, Petitioner would not have pleaded guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. at 59.

Enforcing the appeal waiver is merely holding Petitioner to the bargain he made. Petitioner cannot circumvent the terms of his plea agreement merely because he does not like the outcome at sentencing. *See Bushert*, 997 F.2d at 1350. Petitioner was not promised anything that he did not receive, and he has received no punishment greater than that originally assigned him in the plea agreement.

**Conclusion**

Having reviewed the record, arguments presented by the parties, applicable statutes, and controlling case law in this circuit, the Court finds that Petitioner has not demonstrated that he is entitled to relief under § 2255.

ACCORDINGLY, the Court **ORDERS** that:

1. Petitioner's motion to vacate, set aside, or correct an allegedly illegal sentence (Case No. 8:01-CR-228-T-30TBM, Dkt. 90 and Case No. 8:02-CV-905-T-30TBM, Dkt. 1) is **DENIED**.

2. The Clerk is directed to enter judgment against Petitioner, terminate any pending motions, and close case 8:02-CV-905-T-30TBM.

**DONE** and **ORDERED** in Tampa, Florida on September 2, 2005.

/s/ James S. Moody, Jr.
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to</u>:
Counsel/Parties of Record